## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA
## JOHNSTOWN DIVISION

MARK ALLEN PRINKEY,       )
                                )
     Petitioner,       )
                                )
    vs.                )
                                )
SUPERINTENDENT HAINSWORTH,  )
and DISTRICT ATTORNEY OF    )
BEDFORD COUNTY,       )
                                )
     Respondents.    )

Civil Act. No. 3:23-cv-00201

United States Magistrate Judge
Christopher B. Brown

## MEMORANDUM OPINION DENYING
## PETITION FOR WRIT OF HABEAS CORPUS

### Christopher B. Brown, United States Magistrate Judge

Pending before the Court[1] is the Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 ("Petition") filed pro se by Petitioner, Mark Allen Prinkey, a state prisoner in the custody of the Pennsylvania Department of Corrections. ECF No. 4. Prinkey is challenging the February 19th, 2014, Judgment of Sentence imposed by the Court of Common Pleas of Bedford County at Criminal Case No. CP-05-CR-0000242-2007. For the reasons below, the Court will deny each of Prinkey's claims and will deny a certificate of appealability as to each claim.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a U.S. Magistrate Judge conduct proceedings in this case, including entry of a final judgment. *See* ECF Nos. 15 and 18.

## I.    Jurisdiction

This Court has jurisdiction under 28 U.S.C. § 2254, the federal habeas statute applicable to prisoners in custody pursuant to a state court judgment.  It permits a federal court to grant a state prisoner the writ of habeas corpus "on the ground that he is in custody in violation of the Constitution . . . of the United States."  28 U.S.C. § 2254(a).  Errors of state law are not, however, cognizable in a federal habeas action.  *Id.*; *see, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Indeed, the Court is bound by the state courts' determinations of state law.  *See, e.g.*, *Priester v. Vaughn*, 382 F.3d 394, 402 (3d Cir. 2004) ("Federal courts reviewing habeas claims cannot 'reexamine state court determinations on state-law questions.'")(quoting *Estelle*, 502 U.S. at 67-68).

It is a petitioner's burden to establish entitlement to the writ.  28 U.S.C. § 2254(a); *see, e.g.*, *Vickers v. Superintendent Graterford SCI*, 858 F.3d 841, 848-49 (3d Cir. 2017), *as amended* (July 18, 2017).  There are prerequisites, however, that a petitioner must satisfy before habeas relief is appropriate.  For example, the burden imposed on a petitioner by the standard of review enacted by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") (which is discussed below).  But, ultimately, a petitioner cannot receive federal habeas relief unless it is established the petitioner is in custody in violation of federal constitutional rights.  28 U.S.C. § 2254(a); *see, e.g.*, *Vickers*, 858 F.3d at 849.

## II.     The Standard for Habeas Relief Under 28 U.S.C. § 2254

### A.     Exhaustion and Procedural Default[2]

Before a federal court can consider the merits of a habeas claim, a petitioner must comply with the exhaustion requirement of 28 U.S.C. § 2254(b), giving "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  This requires the claim to have been presented at least to the Pennsylvania Superior Court.  *Lambert v. Blackwell*, 387 F.3d 210, 233-34 (3d Cir. 2004).

The procedural default doctrine prohibits a federal court from reviewing a habeas claim which was dismissed by the state court based on an independent and adequate state procedural rule.  *Coleman v. Thompson*, 501 U.S. 722, 749 (1991), *holding modified by Martinez v. Ryan*, 566 U.S. 1 (2012); *Nara v. Frank*, 488 F.3d 187, 199 (3d Cir. 2007), *as amended* (June 12, 2007).  The doctrine is grounded in concerns of comity and federalism.  *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).  "[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an

---

[2]     Respondents do not address whether the Petition was timely filed within AEDPA's one-year limitations period.  *See* 28 U.S.C. § 2244(d)(1).  The Court independently finds the Petition was timely filed.  Prinkey's post-sentence motions were denied on May 8, 2014, which started the AEDPA one-year clock.  Thereafter, he had multiple timely proceedings in the state courts, both on direct appeal and PCRA collateral challenges, which tolled the clock.  By the Court's calculations, during this entire period, only about 208 days had expired on the AEDPA time clock. When the Pennsylvania Supreme Court denied Prinkey's petition for allowance of appeal on July 25, 2023, he had 157 days left on the AEDPA one-year clock to file his federal habeas petition, or until December 29, 2023.  He filed this instant petition on August 25, 2023, well within the AEDPA one-year clock. *See* publicly available dockets, of which this Court has taken judicial notice, Common Pleas docket – CP-05-CR-0000242-2007; Superior Court dockets – 925 WDA 2014 and 1380 WDA 2018; and PA Supreme Court dockets – 350 WAL 2015, 319 WAL 2020, 23 WAP 2021, and 57 WAL 2023.

opportunity to address those claims in the first instance." *Id.* (quoting *Coleman*, 501 U.S. at 732). Procedural default can be overcome only where a habeas petitioner shows: (a) cause for his state-court default of any federal claim and prejudice resulting therefrom; or (b) that a fundamental miscarriage of justice will occur if the claim is not considered. *Edwards*, 529 U.S. at 451.

For a petitioner to satisfy the fundamental miscarriage of justice exception to the rule of procedural default, the Supreme Court requires a petitioner to show that a "'constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).  To satisfy this standard, a petitioner must present new, reliable evidence of factual innocence.  *Id.* at 324.

## B.    Merits Review

Under the federal habeas statute, review is limited and relief may be granted only if (1) the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or if (2) the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2).  A "run-of-the-mill" state-court adjudication applying the correct legal rule from Supreme Court decisions to the facts of a particular case will not be "contrary to" Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).  For that reason, the issue in most federal habeas

cases is whether the adjudication by the state court survives review under the "unreasonable application" clause of § 2254(d)(1). Factual issues determined by a state court are presumed to be correct, rebuttable only by clear and convincing evidence. *Werts v. Vaughn*, 228 F.3d 178, 196 (3d Cir. 2000) (citing 28 U.S.C. § 2254(e)(1)).

The Supreme Court has explained that "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams,* 529 U.S. at 412-13. As for "the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The "unreasonable application" inquiry requires the habeas court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409. As the Court of Appeals for the Third Circuit has noted, "an unreasonable application of federal law is different from an incorrect application of such law and a federal habeas court may not grant relief unless that court determines that a state court's incorrect or erroneous application of clearly established federal law was also unreasonable." *Werts*, 228 F.3d at 196 (citing *Williams*, 529 U.S. at 411).

For claims that were not addressed by the state courts in the first instance, this deferential standard of review does not apply. *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001) ("when, although properly preserved by the defendant, the state court has not reached the merits of a claim thereafter presented to a federal habeas court, the deferential standards provided by AEDPA . . . do not apply."). In those circumstances, claims are reviewed using the de novo standard of review. *See Jacobs v. Horn*, 395 F.3d 92, 100 (3d Cir. 2005) ("In cases where the AEDPA standards of review do not apply, federal habeas courts apply pre-AEDPA standards of review."). "[T]he state court's factual determinations are still presumed to be correct, rebuttable upon a showing of clear and convincing evidence." *Appel*, 250 F.3d at 210 (citing 28 U.S.C. § 2254(e)(1)).

## III.    Factual History

The Superior Court of Pennsylvania, in its decision affirming denial of PCRA relief, summarized the evidence established at Prinkey's trial:

> [Prinkey] took a seven-year old female child into a barn to feed calves, despite the victim first telling him that she did not want to go. While in the barn area, after [Prinkey] fed the calves, he asked the young child if she had a boyfriend or if she had ever kissed a boy. The victim answered no. [Prinkey] then went down on his knees and placed his hands on her shoulders. The victim then fled the barn and told her teenage half-sister[1] and another friend about these actions and that [Prinkey] attempted to kiss her.[2]

> When the victim's mother arrived, the victim relayed the same information to her mother, stating that she thought [Prinkey] was going to try to kiss her.[3] In an interview with police, [Prinkey] stated that he guessed his intent was pleasure and that if he did kiss the victim that

the incident could have possible escalated to additional sexual acts, including the victim potentially performing oral sex.  He did not indicate that he intended for the victim to perform oral sex, although he did admit that he intended to kiss the girl.

Police charged [Prinkey] with attempted involuntary deviate sexual intercourse ("IDSI") with a child, attempted indecent assault with a person less than thirteen years of age, and corruption of the morals of a minor.

---

[1] The sister is [Prinkey's] daughter.

[2] The court admitted this evidence under the excited utterance hearsay exception.

[3] At trial, the victim did not testify that [Prinkey] tried to kiss her, only that he touched her shoulder after kneeling down.  She also testified that he did not pull her face to kiss him.  The statement to her mother was admitted under 42 Pa.C.S. § 5985.1, the tender years hearsay exception.

ECF No. 4-1, at 122-23.

## IV.    Procedural History[3]

The procedural history of Prinkey's criminal proceedings is long and includes two direct appeals, collateral challenges to his original sentence, the original judgment of sentence being vacated and the case remanded for resentencing, a resentence hearing, and challenges to the mandatory minimum sentence imposed at the resentencing hearing.  It is the judgment of sentence issued as a result of the

---

[3]      Both Prinkey and Respondents electronically filed relevant parts of the state court record. For ease of reference, the Court uses the page numbers from the CM/ECF headers. *See* ECF Nos. 4 and 20.

resentencing that is at the heart of this habeas case.  Therefore, what follows is a summary of only the relevant proceedings.

## A.    The Trial, Original Sentencing, and Direct Appeals

On April 28, 2008, Prinkey proceeded to a jury trial in the Court of Common Pleas of Bedford County, Case No. CP-05-CR-0000242-2007, before the Honorable Daniel Lee Howsare, where he was found guilty of attempted IDSI with a child, attempted indecent assault with a person less than 13 years of age, and corruption of the morals of a minor.[4]  ECF No. 4-1 at 164-165. Following a hearing on September 2, 2008, the trial court found Prinkey to be a sexually violent predator ("SVP").  ECF No. 4-1 at 165; ECF No. 20-1 at 68.  The trial court then proceeded to sentencing:

> During proceedings, Judge Howsare sua sponte questioned the Commonwealth concerning its failure to provide notice pursuant to 42 Pa.C.S. § 9718.2(a)(1) and (b) (providing for "a minimum sentence of at least twenty-five years of total confinement" and a maximum sentence of fifty years upon a second conviction for certain enumerated sexual crimes).[2]  The Commonwealth confirmed that notice had not been provided.[3]  Instead the Commonwealth requested the imposition of a sentence of ten and one-half to forty years of incarceration. Ultimately, Judge Howsare imposed ten to twenty-five years of imprisonment in connection with attempted IDSI and a concurrent term of eighteen to thirty-six months with respect to corruption of a minor.  [Prinkey's] conviction for attempted indecent assault merged with attempted IDSI.  Thus, [Prinkey's] original sentence was set at ten to twenty-five years of imprisonment.

---

[4]      "After the Commonwealth completed its case-in-chief, [Prinkey] took the stand and acknowledged that he asked the victim if she had a boyfriend or she had kissed a boy.  He denied attempting to kiss the victim, and asserted that he only made that statement due to police coercion." ECF No. 20-1 at 26.

---

[2] In 1998, [Prinkey] was convicted of IDSI in a separate, unrelated case.

[3] Specifically, the district attorney for Bedford County averred that it was his belief that [Prinkey's] attempt convictions were not predicate offenses pursuant to 42 Pa.C.S. § 9718.2. . . . Indeed, the district attorney expressed he would have pursued § 9718.2 but for his erroneous belief concerning attempt crimes. . . .

ECF No. 4-1 at 35; ECF 20-1 at 68-69. Following the denial of Prinkey's post-sentence motions, Prinkey timely appealed challenging the sufficiency of the evidence, the weight of the evidence, and his classification as an SVP. ECF No. 4-1 at 165. The Superior Court denied the direct appeal primarily based on the failure of Prinkey's counsel to adequately brief the issues, but denied the challenge to his classification as a SVP finding "the Commonwealth proved by clear and convincing evidence that Prinkey is a sexually violent predator." *Id.* at 174. No further appeals were taken.

## B.    PCRA Proceedings After Trial and Sentencing

Prinkey then filed a timely pro se collateral attack, seeking post-conviction relief under 42 Pa.C.S. § 9546(d), Pennsylvania's Post Conviction Relief Act ("PCRA"), on November 22, 2010, and an amended pro se petition on August 18, 2011. ECF No. 20-1 at 27. Counsel filed a second amended petition on December 17, 2011, and an addendum to that petition three days later. *Id.*

The case was reassigned to the Honorable Thomas L. Ling for disposition. After conducting a hearing, Judge Ling denied the petition. *Id.* Prinkey timely

appealed.  The Superior Court affirmed in part, reversed in part, vacated the judgment, and remanded for resentencing.  ECF No. 4-1 at 132.  Specifically, the Superior Court found Prinkey's direct appeal counsel's "inadequate briefing precluded [the Superior Court] from reaching a meritorious sufficiency claim for [Prinkey's] attempted IDSI conviction" and, accordingly,

> [W]e reverse [Prinkey's] conviction for attempted IDSI and vacate his judgment of sentence. As our reversal is based on insufficient evidence, [Prinkey] cannot be re-tried for attempted IDSI and he is discharged as to that crime.  In addition, because our reversal causes his judgment of sentence for attempted IDSI to be vacated, it upsets [Prinkey's] sentencing scheme and we remand for resentencing.

*Id.*

## C.    Resentencing

Prior to resentencing, the Commonwealth served notice it intended to seek a statutory mandatory minimum sentence pursuant to 42 Pa.C.S. § 9718.2, which would mandate a minimum sentence of not less than 25 years for the attempted indecent assault conviction.[5]  ECF No. 20-1 at 27.  Prinkey, through counsel, moved to dismiss the Commonwealth's notice.  The court received briefs from the parties and Judge Ling held a hearing on the imposition of the mandatory sentence.  ECF No. 20-1 at 27.  Prinkey's counsel argued imposition of the mandatory minimum at resentencing would violate due process because it was not imposed at the first

---

[5]    "Per 42 Pa.C.S. § 9718.2(a)(1), '[a]ny person who is convicted' of attempted indecent assault 'shall, if at the time of the commission of the current offense the person had previously been convicted of an offense set forth in' 42 Pa.C.S. §9799.14 (relating to sexual offenses and tier system), "be sentenced to a minimum of at least [twenty-five] years of total confinement."  ECF No. 4-1 at 84, n. 6.

sentencing and would result in a longer sentence.  ECF No. 20-2 at 79.  The

prosecutor responded it was pursuing the mandatory sentence in light of the

reduced overall sentence Prinkey could legally receive following the discharge of his

attempted IDSI conviction:

> [t]he defendant when he was originally convicted was
> facing 52 years in prison.  Judge Howsare could have
> sentenced him to 26 to 52 years in prison.  And the
> Commonwealth made the recommendation close to that at
> the time of the original sentencing.  However, we left the
> discretion to the Court to sentence whatever seemed
> appropriate.  And the judge sentenced him to 10 years to
> 25 years . . . . If we're supposed to exercise these
> mandatories with discretion, and I believe that we do in
> my office . . . – should we then be penalized for not
> seeking them in the first instance, when the
> circumstances have changed, and changed drastically?
>
> This defendant who was once facing 52 years in jail for
> the same exact conduct, is now only facing 14 years in jail
> for that conduct.  In other words, the mandatory is so
> much more necessary than it was in the first instance,
> where the judge could have sentenced him up to 52 years.
> Quite frankly, your Honor, I wish the mandatory was
> worded so that you had the discretion up to 25 years, but
> you don't. . . You either sentence the 50 years or you don't,
> because of the mandatory . . . . To tell you the truth if the
> defendant could be sentenced to the ten to twenty years
> that he was originally sentenced, I think that would be a
> good sentence.  But I can't make that recommendation
> when the Court can't impose that sentence[.]
>
> This is a man, who . . . was out of jail for a couple of
> months, a couple of months before he re-offended.  He's a
> pedophile.  He's a sexually violent predator. . . .  He has a
> sincere interest in having sex with children.  That's what
> he is and there's only one way to keep society safe from
> him and that's to keep him behind bars.  And that's why
> this mandatory is there.  So, we had the discretion in the
> instant case to not seek the mandatory and we didn't.

> But now we think it's appropriate.  It's all the more important now that the offenses are lesser.

ECF No. 20-2 at 79-80.[6]  Over Prinkey's objection, the resentencing court imposed the mandatory minimum, sentencing Prinkey to 25 to 50 years' incarceration for the conviction of attempted indecent assault, as well as a consecutive term of 18 to 36 months' incarceration for the conviction of corrupting the morals of a minor, resulting in an aggregate sentence of 26-1/2 years to 53 years.  ECF No. 20-1 at 72-73.

In denying Prinkey's post-sentence motion challenging the imposition of the mandatory minimum sentence, Judge Ling stated "it 'believe[d] the law required that it impose the mandatory sentence and that [it] lacked discretion to do otherwise' because 'the Commonwealth has properly served notice, and [Prinkey] falls within [the] provisions of 42 Pa.C.S. § 9718.2(a)(1).'"  ECF No. 4-1 at 85 (quoting Tr. Ct. Op., 5/8/2014, at 10).

Prinkey filed a second direct appeal raising various issues about imposition of the mandatory sentence.  The Superior Court affirmed the judgment of sentence in a 2-1 decision,[7] ECF No 20-1 at 25, and the Pennsylvania Supreme Court denied his

---

[6]    "At the time of the offense in 2007, [Prinkey] was on active parole resulting from a 1998 conviction for involuntary deviate sexual intercourse (F-1) for which he was sentenced to seven (7) to twenty (20) years in the state correctional institution.  [Prinkey] was released in 2006." ECF No. 4-1 at 49.

[7]    In his dissent, Judge Musmanno expressed his concern over the doubling of Prinkey's sentence on remand: "Undoubtedly, by vacating [Prinkey's] sentence for his felony conviction of attempted IDSI, this Court disrupted the trial court's sentencing scheme.  However, on remand, doubling [Prinkey's] sentence, even by application of a statutory mandatory minimum sentencing provision, appears suspect and vindictive."  ECF No. 20-1 at 31-32.

petition for allowance of appeal.  *See Com. v. Prinkey*, 125 A.3d 463 (Pa. Super. 2015), *appeal denied*, 131 A.3d 491 (Pa. 2016).

### D.    The Second PCRA Proceedings

Prinkey then filed a timely pro se PCRA petition and counsel filed an amended petition arguing the mandatory sentence was the product of per se vindictiveness (citing *North Carolina v. Pearce*, 395 U.S. 711, 725 (1969)).  ECF No. 4-1 at 39.  After a hearing, the PCRA court denied the PCRA petition because of a lack of affirmative evidence of vindictiveness.  ECF No. 20-2 at 48; ECF No. 20-2 at 1.

Prinkey timely appealed to the Superior Court, raising four claims:

> I.  Whether or not the application of a mandatory sentence[,] after a successful appeal that disrupts the overall sentencing scheme[,] should be per se vindictive and[,] therefore[,] impermissible under both the Federal and Pennsylvania Constitutions?

> II.  Whether or not the failure of prior PCRA counsel to advise [Prinkey] that he may face a mandatory sentence of twenty-five (25) years if resentenced was ineffective assistance of counsel?

> III.  Whether or not it is a violation of the Double Jeopardy provision[] of the Pennsylvania Constitution for the Commonwealth to impose a mandatory sentence[,] when a matter is remanded for resentencing after a partially successful appeal?

> IV.  Whether or not [Prinkey's] registration requirements under Megan's Law must revert to the requirements of Megan's Law II, which was in effect when he was originally sentenced and convicted[,] under **Commonwealth v. Muniz**[, 164 A.3d 1189 (Pa. 2017),] and **Commonwealth v. Butler**[, 173 A.3d 1212 (Pa.

Super. 2017) [("**Butler I**")], **appeal granted**, 190 A.3d
581 (Pa. 2018)]?

ECF No. 4-1 at 108. In a Memorandum filed June 25, 2020, written by Judge

Musmanno, the Superior Court denied the first claim finding it was not cognizable

under the PCRA as this was a challenge to the discretionary aspects of sentencing[8]

and denied on the merits Claims II, III, and IV. ECF No. 4-1 at 104-116.

Prinkey filed a petition for allowance of appeal to the Pennsylvania Supreme

Court raising one issue:

> Should ***Commonwealth v. Robinson***, 931 A.2d 15 (Pa.
> Super. 2007) (en banc) be overturned so that
> Pennsylvania law will treat an appellate challenge to a
> sentence on the basis of a claim of vindictiveness as a
> challenge to the legality of the sentence as opposed to the
> discretionary aspects of sentencing that cannot be raised
> under the Pennsylvania Post-Conviction Relief Act?

ECF No. 4-1 at 87.[9] *See also Commonwealth v. Prinkey*, 262 A.3d 456 (table) (Pa.

2021). The Pennsylvania Supreme Court "abrogated this aspect of [the Superior

Court's] holding and remanded for consideration of the merits of [Prinkey's] claim of

per se prosecutorial vindictiveness." ECF No. 4-1 at 40. Because only a narrow

question was presented, the Pennsylvania Supreme Court addressed only "the scope

of the PCRA and the continued vitality of the Superior Court's decision in

*Robinson*." ECF No. 4-1 at 102 and n.23 ("*See* Pa.R.A.P. 1115(a)(4) ('Only the

---

[8]    The Superior Court in rejecting Claim I stated, "We are constrained to reach this conclusion, based upon the clear holding in ***Robinson***. However, we are troubled that this case appears to be a blatant example of prosecutorial vindictiveness." ECF No. 4-1 at 111.

[9]    In *Robinson*, an en banc panel of the Superior Court held that a claim challenging a sentence as vindictive implicates the discretionary aspects of sentencing. *Commonwealth v. Robinson*, 931 A.2d 15, 20 (Pa. Super 2007) (en banc).

questions set forth in the petition, or fairly comprised therein, will ordinarily be considered by [this Court] in the event an appeal is allowed.'").  Thus, the Pennsylvania Supreme Court did not review the Superior Court's denial of Claims II, III, or IV which were adjudicated on the merits by the Superior Court.

On remand to the Superior Court, Prinkey framed his argument as raising a constitutional challenge:

> Whether the Commonwealth's decision to seek a mandatory sentence pursuant to 42 Pa.C.S. § 9718.2 constituted vindictiveness in resentencing in this case for the purposes of [*North Carolina v. Pearce*, 395 U.S. 711 (1969)] and its progeny, and therefore a violation of [Prinkey's] constitutional rights?

ECF No. 4-1 at 40.[10]  The Superior Court affirmed the denial of Prinkey's vindictiveness claim finding Prinkey "had failed to offer any affirmative evidence of prosecutorial vindictiveness in this matter."  *Id.* at 45.  Prinkey's petition for allowance of appeal to the Pennsylvania Supreme Court was denied on July 25, 2023.  ECF Nos. 20-1 at 1.

---

[10]     In *Pearce*, the Supreme Court of the United States considered "the broader problem of what constitutional limitations there may be upon the general power of a judge to impose upon reconviction a longer prison sentence than the defendant originally received" and held the Due Process Clause of the Fourteenth Amendment circumscribes that power.  *Pearce*, 395 U.S. at 719, 724-25.  "While *Pearce* addressed judicial vindictiveness, the same due process principles, including the presumption, apply when the retaliatory decision is made by a prosecutor."  ECF No. 4-1 at 98, n. 21 (citations omitted).

E.      **The Instant Federal Habeas Case**

After the state-court proceedings concluded,[11] Prinkey filed the instant pro se

federal habeas petition under 28 U.S.C. § 2254 on August 25, 2023, raising four

grounds for habeas relief.  ECF No. 1.  Respondents filed an Answer, ECF No. 13,

arguing all four claims lack merit and the Petition should be dismissed.  Prinkey

did not file a reply.  *See* Local Rule 2254(E)(2) ("the petitioner may file a Reply (also

known as "a Traverse") within 30 days of the date the respondent files its Answer.").

The matter is ripe for resolution.

## V.  **Analysis**

As previously noted, Prinkey, acting pro se, raises four grounds for habeas

relief:

> GROUND ONE:  On resentencing, the petitioner wasn't
> given the opportunity to speak to the court before the
> actual announcement of the sentence.  The defendant
> [has] a right of allocution; ECF No. 4 at 6.
>
> GROUND TWO:  Whether or not the application of a
> mandatory sentence, after a successful appeal that
> disrupts the overall sentencing scheme, should be per se
> vindictive, under both the federal and Pennsylvania
> Constitutions; *id.* at 8.
>
> GROUND THREE:  Whether or not it is a violation of the
> Double Jeopardy provision of the Pennsylvania
> Constitution for the Commonwealth to impose a
> mandatory sentence, on a remand, after a partially
> successful appeal; *id.* at 9.

---

[11]      It appears Prinkey filed additional motions in state court after the filing of this federal habeas petition.  *See* ECF No. 20-1 at 15 (Petition for Writ of Error Coram Nobis, and a second PCRA petition asserting an ineffective assistance of counsel claim; *id.* at 78).  On April 15, 2025, the Honorable Patrick T. Kiniry denied the second PCRA petition as untimely.  *Id.* at 81.  It does not appear Prinkey filed any appeal of that decision and Respondents have notified the Court that Prinkey has no further pending state court proceedings of which they are aware.  ECF No. 20.

> GROUND FOUR:  Whether or not Prinkey's registration requirement under Megan's Law must revert to the requirements of Megan's Law II, which was in effect when he was originally sentenced and convicted; *id.* at 11.

ECF No. 4 at 6, 8, 9, and 11 (quoted verbatim).  The claims will be discussed in order.

### A.    Claim I - The Right of Allocution is Not a Cognizable Federal Habeas Claim

Respondents argue the claim should be dismissed as it does not raise a cognizable federal claim.  ECF No. 13 at 2.  The Court agrees.

"Federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension."  *Wainwright v. Goode*, 464 U.S. 78, 83 (1983) (citing *Engle v. Isaac*, 457 U.S. 1141 (1982)).  The right of allocution is recognized as a procedural matter at sentencing, not a substantive right.  *See* Fed.R.Crim.P. 32(i)(4)(A); Pa.R.Crim.P. 1405; *Hill v. United States,* 368 U.S. 424 (1962); *United States v. Moreno*, 809 F.3d 766, 777 (3d Cir. 2016); *Commonwealth v. Thomas,* 553 A.2d 918, 919 (Pa. 1989) ("[O]ur rules of criminal procedure guarantee the right to all who stand convicted of crimes.").  In *Hill*, the Supreme Court described the failure of a trial court to grant a right of allocution as "not a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure.  It does not present 'exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent.'"  368 U.S. at 428 (quoting *Bowen v. Johnston*, 306 U.S. 19, 27 (1939)).

Since the right of allocution is not guaranteed by the U.S. Constitution, it is not a cognizable claim in a federal habeas petition.  *See, e.g.*, *United States v. Ward*, 732 F.3d 175, 181 (3d Cir. 2013) ("[a]lthough the right of allocution predates the founding of the Republic, it is not a right guaranteed by the Constitution."); *Story v. Kindt*, 957 F. Supp. 716 (W.D. Pa. 1997) (holding allocution claim not cognizable in habeas petitions).  Because Prinkey's allocution claim is not cognizable in a federal habeas petition, the claim will be dismissed.

## B.    Claim II – Prinkey's per se vindictive argument fails under AEDPA's standard of review

Respondents argue this claim fails to state a "claim of a violation of the Constitution, laws, or treaties of the United States" and "attacks the application of a state mandatory sentence . . . and no way sets forth specific facts as to any violation of the Constitution, laws, or treaties of the United States."  ECF No. 13 at 2.  The Court finds Respondents' argument lacks merit as Ground Two clearly states, "the application of a mandatory sentence, after a successful appeal that disrupts the overall sentencing scheme, should be per se vindictive under *both the federal and Pennsylvania Constitution*."  ECF No. 4 at 8 (emphasis added).

In Prinkey's counseled amended PCRA petition, filed on February 14, 2017, he asserted, among other things, that his sentence resulted from per se vindictiveness.  ECF No. 4-1 at 39.  "[T]he PCRA court found this argument lacked merit since the Commonwealth's justification did not 'reflect any vindictiveness on the part of the Commonwealth . . . [and] denied Appellant's claim due to a lack of affirmative evidence of vindictiveness."  *Id.* (citation omitted).  The Superior Court

initially affirmed the PCRA court's denial of the claim on procedural grounds. *Id.* at 40. The Pennsylvania Supreme Court, however, "remanded for consideration of the merits of [Prinkey's] claim of per se prosecutorial vindictiveness." *Id.* On remand, Prinkey framed his claim as:

> Whether the Commonwealth's decision to seek a mandatory sentence pursuant to 42 Pa.C.S. § 9718.2 constituted vindictiveness in resentencing in this case for the purposes of [*Pearce*] and its progeny, and therefore a violation of [Prinkey's] constitutional rights.

*Id.*

After a thorough analysis of the Supreme Court's decision in *Pearce* and its progeny, the Superior Court determined Prinkey had "advanced no affirmative evidence to establish the existence of actual vindictiveness," *id.* at 43, nor had Prinkey established "that the Commonwealth's pursuit of a mandatory sentence was undertaken 'without any justification[.]'" *Id.* at 44. To that end, the Superior Court stated, "the Commonwealth's rationale for seeking the imposition of § 9718.2 at resentencing is an undisputed matter of record[.]" *Id.* The Superior Court then repeated the Commonwealth's explanation for the filing of its intent to invoke the mandatory minimum and stated:

> We discern no vindictiveness on the part of the Commonwealth. To the contrary, the Commonwealth's motivations seem perfectly in line with the underlying purpose of mandatory sentencing statutes like § 9718.2, which are a response to undisputed recidivist offenders like Appellant. ***See Commonwealth v. Helsel***, 53 A.3d 906, 913 (Pa. Super. 2012) ("The generally recognized purpose of such graduated sentencing laws [as § 9718.2] is to punish offenses more severely when the defendant has exhibited an unwillingness to reform his miscreant ways and to conform his life according to the law.").

19

> Overall, [Prinkey] has failed to offer any affirmative evidence of prosecutorial vindictiveness in this matter. Thus, his claim necessary fails.
>
> Based on the foregoing, we find no error of law or abuse in discretion in the PCRA court's conclusion that [Prinkey's] claim of vindictiveness lacked merit, which is supported by the record and free of legal error. Thus, we affirm the PCRA court's denial of [Prinkey's] vindictiveness claim.

*Id.* at 45 (internal citations omitted). Stated another way, the Superior Court concluded Prinkey had failed to establish either a presumption of vindictiveness or the existence of actual vindictiveness by the Commonwealth. *Id.* at 43.

Because the Superior Court adjudicated Prinkey's per se vindictive argument claim on the merits, this Court's analysis of it is governed by AEDPA's standard of review, specifically § 2254(d). The "clearly established Federal law," 28 U.S.C. § 2254(d)(1), is *Pearce* and its progeny.

In addition, state court findings of fact have always been afforded considerable deference in federal habeas corpus cases filed by state inmates. "It is a well-established principle of federal law that state trial judges deserve substantial deference." *Nara,* 488 F.3d at 201 (quoting *United States v. Oregon State Med. Soc.,* 343 U.S. 326, 339 (1952)). AEDPA continues that substantial deference and requires that "a determination of a factual issue made by a State court shall be *presumed to be correct.* The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1) (emphasis added). *See also Rice v. Collins*, 546 U.S. 333, 338–39 (2006). This section of the federal habeas statute is of particular importance here because of

the factual determinations made by the PCRA court following the prosecution's explanation during the resentencing hearing of its rationale for seeking the mandatory minimum sentence.

### 1.    The Superior Court's Adjudication Was Not "An Unreasonable Determination of the Facts"

Because the PCRA court's rejection of Prinkey's factual allegations was central to the Superior Court's disposition of Prinkey's per se vindictiveness claim, it makes sense for this Court to first review the merits of the claim under § 2254(d)(2) and § 2254(e)(1), the provisions of AEDPA applicable to claims that turn on issues of fact.[12]

In 2023, upon remand, the Superior Court made the factual determination that Prinkey had failed to establish either a presumption of vindictiveness or the

---

[12]    The Supreme Court has not yet defined the precise relationship between § 2254(d)(2) and § 2254(e)(1) *See Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010) and stating "[w]e have not defined the precise relationship between § 2254(d)(2) and § 2254(e)(1)[.] . . . For present purposes, it is enough to reiterate 'that a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.' "). The Court of Appeals for the Third Circuit has described the approach a federal habeas corpus court should take as follows:

> [A] federal court may wish to consider subsidiary challenges to individual fact-finding in the first instance applying the presumption of correctness as instructed by (e)(1). Then after deciding these challenges, the court will view the record under (d)(2) in light of its subsidiary decisions on the individual challenges. In other instances, a federal court could conclude that even if [the] petitioner prevailed on all of his individual factual challenges notwithstanding the (e)(1) presumption of their correctness, the remaining record might still uphold the state court's decision under the overarching standard of (d)(2). In that event, presumably the (d)(2) inquiry would come first.

> Whatever the order of inquiry, however, two points are paramount. First, both (d)(2) and (e)(1) express the same fundamental principle of deference to state court findings. Second, before the writ can be granted, petitioner must show an unreasonable determination – under (d)(2) – in light of the entire record in the original state court trial.

*Lambert v. Blackwell*, 387 F.3d 210, 236 n.19 (3d Cir. 2004).

existence of actual vindictiveness by the Commonwealth.  ECF No. 4-1 at 43.  And under § 2254(d)(2), this Court must defer to a state court's determination of the facts unless the state-court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  Section 2254(d)(2) requires federal courts to give state courts "substantial deference."  *Brumfield v. Cain*, 576 U.S. 305, 314 (2015).  The Court may not characterize state court factual determinations as unreasonable merely because "[the Court] would have reached a different conclusion in the first instance."  *Id.* at 313-14 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

Prinkey has not met his burden of rebutting with clear and convincing evidence the presumption of correctness that this Court must afford to the state court's factual determinations.  *See* 28 U.S.C. § 2254(e)(1).

### 2.    The Superior Court's Adjudication Was Not "Contrary To" *Pearce* and Its Progeny

Next, this Court must determine whether Prinkey has met his burden of establishing that the Superior Court's adjudication of his claim was "contrary to" *Pearce* and its progeny.  "The test for § 2254(d)(1)'s 'contrary to' clause is whether the state court decision 'applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result."  *Rountree v. Balicki*, 640 F.3d 530, 537 (3d Cir. 2011) (cleaned up).  Prinkey has not made that showing.

Prinkey has not shown that the state court's denial of his per se vindictive prosecution claim was contrary to clearly established Federal law. The Superior Court applied relevant Supreme Court cases[13] and, concluded Prinkey had failed to establish either a presumption of vindictiveness or the existence of actual vindictiveness of the Commonwealth. ECF 4-1 at 43. Therefore, its adjudication withstands review under the "contrary to" clause of § 2254(d)(1). *Williams,* 529 U.S. at 406 ("a run-of-the mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.").

### 3.    The Superior Court's Adjudication Was Not "An Unreasonable Application of" *Pearce* and Its Progeny

The final inquiry for the Court is whether Prinkey has established that the Superior Court's adjudication was an "unreasonable application of" *Pearce* and its progeny. His burden here is difficult to meet. The Supreme Court held "[i]t bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state

---

[13]    In its decision, the Superior Court cited to a number of Supreme Court decisions, *e.g., Pearce*, 395 U.S. at 721; *Texas v. McCullough*, 475 U.S. 134, 138 (1986) ("[t]he *Pearce* requirements . . . do not apply in every case where a convicted defendant receives a higher sentence on retrial."); and *Wasman v. United States*, 468 U.S. 559, 569 1984) (holding in the absence of a presumption of vindictiveness, the defendant "must affirmatively prove actual vindictiveness.").

proceedings." *Harrington*, 562 U.S. at 102 (internal citation omitted).  The Supreme

Court has instructed that § 2254(d)(1)'s "unreasonable application" clause:

> preserves authority to issue the writ in cases where there
> is no possibility fairminded jurists could disagree that the
> state court's decision conflicts with this Court's
> precedents. It goes no further.  Section 2254(d) reflects
> the view that habeas corpus is a "guard against extreme
> malfunctions in the state criminal justice systems," not a
> substitute for ordinary error correction through appeal.
> *Jackson v. Virginia*, 443 U.S. 307 (1979) (Stevens, J.,
> concurring in judgment).  *As a condition for obtaining
> habeas corpus from a federal court, a state prisoner must
> show that the state court's ruling on the claim being
> presented in federal court was so lacking in justification
> that there was an error well understood and
> comprehended in existing law. . . .*

*Id.* at 102-03 (emphasis added).  After a careful review of the state court record, the

Court finds there is no basis for this Court to conclude the Superior Court's

adjudication was an "unreasonable application" of *Pearce* and its progeny.  Prinkey

has not established that the Superior Court's decision to deny this claim "was so

lacking in justification that there was an error well understood and comprehended

in existing law beyond any possibility for fairminded disagreement." *Harrington*,

562 U.S. at 103.

For these reasons, the Court finds Prinkey's per se vindictive argument fails

under § 2254(d) and, as a result, Claim II will be denied.

### C.    Claim III – An Alleged Violation of the Pennsylvania Constitution is Not a Cognizable Federal Habeas Claim

Prinkey seeks habeas relief claiming the imposition of a mandatory minimum

sentence on a remand after a partially successful appeal violates the Double

Jeopardy provision of the Pennsylvania Constitution. ECF No. 4 at 9. As Respondents correctly note, this claim fails to state a cognizable federal claim. ECF No. 13 at 2.

A federal habeas court can determine only whether a petitioner's rights under the *U.S. Constitution or its laws or treaties* were violated – not whether state courts erroneously applied state law. 28 U.S.C. § 2254; *see also Estelle*, 502 U.S. at 67-68 ("[F]ederal habeas corpus relief does not lie for errors of state law . . . We reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *see also Glenn v. Wynder*, 743 F.3d 402, 407 (3d Cir. 2014) (["The petitioner's] claim requires more than a showing that the [state court] erred under Pennsylvania law."). Thus, Prinkey's claim for habeas relief based on a violation of state law is non-cognizable and will be dismissed.

Even if this claim were construed to be raising a violation of the Double Jeopardy provision of the U.S. Constitution, it fails under the AEDPA standard of review.[14] The Superior Court extensively dealt with the issue in its decision issued on July 28, 2015, following Prinkey's resentencing, and denied the claim on the merits. ECF No. 20-1 at 25. As a result, this Court must apply the deferential standard of review contained in § 2254(d)(1).

In its opinion, the majority of the panel held:

> In essence, Appellant contends that principles of double jeopardy somehow prevented the Commonwealth from seeking imposition of a mandatory sentencing upon resentencing.

---

[14]    On appeal, Prinkey argued his resentence violated the double jeopardy clause of the Pennsylvania and the United States Constitution. ECF No. 4-1 at 51.

As the Pennsylvania Supreme Court explained:

> The prescription against twice placing an individual in jeopardy of life or limb is found in the Fifth Amendment to United States Constitution, made applicable to the states through the Fourteenth Amendment. ***Benton v. Maryland***, 395 U.S. 784, 794 (1969). The double jeopardy protections afforded by our state constitution are coextensive with those federal in origin; essentially, both prohibit successive prosecutions and multiple punishments for the same offense. ***Commonwealth v. Fletcher***, 861 A.2d 898 (Pa. 2004). We have described double jeopardy rights as "freedom from the harassment of successive trials and the prohibition against double punishment." ***Commonwealth v. States***, 938 A.2d 1016, 1019 (Pa. 2007). Thus, "[a]n individual may only be punished once for a single act which causes a single injury to the Commonwealth." ***Commonwealth v. Owens***, 649 A.2d 129 (Pa. Super. 1994).

Our review of the record reflects that Appellant was convicted of attempted involuntary deviant sexual intercourse with the child, attempted indecent assault of a person less than 13 years of age, and corruption of a minor. Appellant was then sentenced to serve an aggregate term of incarceration of ten to twenty-five years. On appeal from the denial of PCRA relief, this Court found that Appellant's direct appeal council was ineffective for failing to adequately brief a meritorious issue challenging the sufficiency of the evidence to support the Appellant's conviction have attempted involuntary deviant sexual intercourse. In granting Appellate relief, this Court specifically stated the following:

> Accordingly, we reverse Appellant's conviction for attempted [involuntary deviant sexual intercourse] and vacate his judgment of sentence. As our reversal is based on insufficient evidence, Appellant cannot be re-tried for attempted [involuntary deviant sexual intercourse] and he is

26

discharged as to that crime. In addition, because our reversal causes his judgment of sentence for attempted [involuntary deviate sexual intercourse] to be vacated, it upsets Appellant's sentencing schemes and we remand for resentencing. *Prinkey*, 777 WDA 2012, 83 A.3d 1080 (unpublished memorandum at 17). Thus, this Court effectively prevented an issue of double jeopardy by discharging the crime of attempted involuntary deviant sexual intercourse and ordering the trial court to resentence Appellant as to the two convictions that were left standing.

The record further reflects that, upon remand to the trial court, Appellant was not retried for attempted involuntary deviant sexual intercourse, nor was he resentenced for that crime, as that conviction was discharged. Rather, Appellant was resentenced for his convictions of attempted indecent assault and corruption of a minor as directed by this Court. Accordingly, we fail to see how the trial court's action in following this Court's explicit directive implicates the proscription against double jeopardy. Thus, this claim fails.

ECF No. 20-1 at 29-30 (cleaned up).

The Double Jeopardy Clause of the U.S. Constitution prohibits any person "subject for the same offence to be twice put in jeopardy of life or limb[.]" U.S. Const. amend V. The Double Jeopardy Clause of the Fifth Amendment has been said to "protect against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." *United States v. Baird*, 63 F.3d 1213, 1215 (3d Cir.1995). Prinkey's claim invokes the third prohibition: multiple punishments for the same offense. The Superior Court explained Prinkey was not retried for attempted IDSI, nor was he resentenced for that crime, as that

conviction was discharged.  Rather, he was resentenced on the two convictions left standing.  ECF No. 20-1 at 29-30.

Prinkey has not met the burden imposed on him by AEDPA's standard of review at §2254(d)(1).  The Superior Court rejected Prinkey's double jeopardy argument because it determined a double jeopardy violation had not occurred.  This Court has independently reviewed the record and also concludes that a double jeopardy violation did not occur.

In sum, Prinkey did not face multiple punishments for the same offense. Accordingly, the Superior Court's denial of Prinkey's double jeopardy claim does not contradict the principles established in the applicable Supreme Court precedent, nor does it constitute an unreasonable application of that precedent.  Prinkey's double jeopardy claim does not warrant federal habeas relief and Claim III will be denied.

## D.    Claim IV – Prinkey's Increased Registration Requirement Does Not Violate the Ex Post Facto Clause

Prinkey claims his registration requirements must revert to the requirements of Megan's Law II, which was in effect when he was originally sentenced in 2008. ECF No. 4-11.[15]  His grounds for relief are not clear.  Respondents assert Prinkey

---

[15]     "Pennsylvania's legislature has enacted a series of statutes and amendments requiring registration of information with the Pennsylvania State Police ("PSP") by criminal offenders convicted of certain sexual offenses. *See* 42 Pa. Cons. Stat. §§ 9791-9799.6 (1995) ("Megan's Law I"); 42 Pa. Cons. Stat. §§ 9791-9799.7 (2000) ("Megan's Law II"); 42 Pa. Cons. Stat. §§ 9791-9799.9 (2004) ("Megan's Law III"); 42 Pa. Con. Stat. §§ 9799.10-9799.41 (2012) ("SORNA I"); 42 Pa. Cons. Stat. §§ 9799.10-9799.75 (2018) ("SORNA II")." *Garland v. Pennsylvania*, Civ. Act. No. 18-5250, 2019 WL 8723288, at *1 n.1 (E.D. Pa. Sept. 26, 2019), *report and recommendation adopted*, 2020 WL 2307438 (E.D. Pa. May 8, 2020).

"fails to state any cognizable federal claim and merely contests which version of the state law applies."  ECF No. 13 at 2.

Prinkey essentially raised the same claim in the state courts.  *See* page 13, supra.  In denying it, the Superior Court stated:

> Prinkey acknowledges that he was 'sentenced and classified under Megan's Law II, also known as Act 152 of 2004.'  Under Megan's Law II, Prinkey was required to register as a Tier I offender for 10 years; 'however, because he was determined to be a[n SVP,] he was subject to a lifetime registration period.'  Prinkey recognizes that the adoption of SORNA in 2012 modified the registration requirements to make him subject to an increased reporting period, even without the SVP designation. . . .

> Prinkey's argument is premised on his claim that **Butler I** should be applied retroactively on collateral appeal, to remove his designation as an SVP. . . .  On March 26, 2020, the Pennsylvania Supreme Court reversed this Court's decision in **Butler I**.[16]  *See Commonwealth v. Butler*, 2020 Pa. LEXIS 1692 ("*Butler II*"). . . .

> Because **Butler II** provides no basis upon which to vacate Prinkey's SVP designation, we cannot grant him relief on this claim.

ECF No. 4-1 at 115-16.[17]

---

[16]    "In *Butler I*, [the Superior Court] deemed unconstitutional the SVP assessment provision of SORNA, 42 Pa.C.S.A. § 9799.24, because 'it increased the criminal penalty to which a defendant is exposed without the chosen fact-finder making the necessary factual findings beyond a reasonable doubt.  *Butler I*, 173 A.3d at 1218.  On March 26, 2020, however, the Pennsylvania Supreme Court reversed [the Superior Court's] decision in *Butler I*.  In *Butler II*, [the Pennsylvania] Supreme Court held that registration, notification, and counseling ("RNC") requirements 'applicable to SVPs do not constitute criminal punishment.'"  ECF No. 4-1 at 114-15 (cleaned up).

[17]    "Although the reporting procedure in SORNA was determined to violate the *ex post facto* clauses of the federal and state constitutions in *Commonwealth v. Muniz*, 164 A.3d 1189 (Pa. 2017), this fault was repaired by the enactment of Subchapter I to SORNA, 'which becomes the 'operative version of SORNA for those sexual offenders whose crimes occurred between April 22, 1996, and December 20, 2012."  *Evans v. Salamon*, No. 23-cv-3589, 2024 WL 5398537, at *7 (E.D. Pa. Dec. 3, 2024), *report and recommendation adopted*, 2025 WL 439427 (E.D. Pa. Feb. 7, 2025)..

To the extent Prinkey continues to rely on *Butler I*, such reliance is misplaced. As the Superior Court explained, the Pennsylvania Supreme Court reversed *Butler I* and found the registration, notification, and counseling requirements imposed by SORNA I[18] on SVP offenders "do not constitute criminal punishment." C*ommonwealth v. Butler*, 226 A.3d 972, 993 (Pa. 2020) ("*Butler II*").

And to the extent Prinkey is arguing the increased registration requirements violate the Ex Post Facto Clause of the U.S. Constitution, and to the extent this claim is not procedurally defaulted,[19] the claim fails. "The Ex Post Facto Clause of the Constitution forbids any law that changes the punishment, and inflicts a greater punishment for pre-existing conduct." *United States v. Shenandoah*, 595 F.3d 151, 158 (3d Cir. 2010) (internal quotation marks omitted), *abrogated on other grounds by Reynolds v. United States*, 565 U.S. 432 (2012); *see also* U.S. Const. Art. I § 9.

In 2020, the Pennsylvania Supreme Court addressed whether Subchapter I of SORNA, as retroactively applied to those convicted prior to its effective date,

---

[18]    In 2018, the Pennsylvania General Assembly divided SORNA into two subchapters. Subchapter I of SORNA is applicable to offenders like Prinkey who committed their offenses after April 22, 1966, but prior to December 12, 2012, the effective date of SORNA. *See Commonwealth v. Muniz*, 164 A.3d 1189, 1196 (Pa. 2017), *abrogated by Commonwealth v. Santana,* 266 A.3d 528 (2021); *Commonwealth v. Lacombe*, 234 A.2d 602, 605-06 (Pa. 2020) (holding "Subchapter I is nonpunitive and does not violate the constitutional prohibition against ex post facto laws.). Based on the record before this Court, Prinkey falls within Subchapter I of SORNA.

[19]    To satisfy the exhaustion requirement, a petitioner must demonstrate that the claim raised in the federal petition was "fairly presented" to the state courts. *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). "This requires that the claim brought in federal court be the substantial equivalent of that presented to the state courts. Both the legal theory and the facts supporting a federal claim must have been submitted to the state courts." *Lesko v. Owens*, 881 F.2d 44, 50 (3d Cir. 1989), *cert. denied*, 493 U.S. 1036 (1990).

constituted a punitive and unconstitutional ex post facto claim. *See Commonwealth v. Lacombe*, 234 A.3d 602 (Pa. 2020). The court concluded that the provisions of Subchapter I explicitly do not constitute criminal punishment and any claims that it violates the Ex Post Facto Clause must necessarily fail. *Id.* at 626-27.

To date, the Court of Appeals for the Third Circuit has not issued a binding and precedential opinion holding that SORNA Subchapter I is or is not punitive or that its retroactive application violates the Ex Post Facto Clause. However, it has upheld a retroactive registration requirement in federal SORNA, 34 U.S.C. §§ 20911-32. *Thomas v. Blocker*, No. 21-1943, 2022 WL 2870151 at *3 n.8 (3d Cir. July 21, 2022).

Additionally, following *Lacombe*, numerous district courts in this circuit have held that the application of SORNA does not violate the Ex Post Facto Clause. *See, e.g., Pagan v. Houser*, No. 22-cv-4751, 2025 WL 817487, *4 (E.D. Pa. Feb. 19, 2025), *report and recommendation adopted*, 2025 WL 817596 (E.D. Pa. Mar. 14, 2025); *Peele v. Oberlander*, Civ. A. No. 21-2785, 2023 WL 5487646 at **5-6 (E.D. Pa. Aug. 24, 2023); *Webster v. Tice*, Civ. A. No. 20-476, 2021 WL 6274465 at *2 (E.D. Pa. Dec. 7, 2021), *report and recommendation adopted*, 2022 WL 35606 (E.D. Pa. Jan 4, 2022); *Reaves v. Rowles*, Civ. A. No. 21-904, 2021 WL 5416248 at **5-6 (M.D. Pa. Nov. 19, 2021).

For these reasons, the Court finds Prinkey's challenge to his registration requirement does not warrant federal habeas relief and Claim IV will be denied.

## VI.    Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition.  It provides that "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court[.]"  28 U.S.C. § 2253(c)(1)(A).  It also provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  *Id*. § 2253(c)(2).

"When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  When the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id*.  Applying those standards here, jurists of reason would not find it debatable whether each of Prinkey's claims should be denied.  The Court, therefore, will not issue a certificate of appealability on any of Prinkey's claims.

**VII.    Conclusion**

For all these reasons, the Court will deny each of Prinkey's habeas claims and will deny a certificate of appealability with respect to each claim.  An appropriate order follows.

DATED this 17th day of November, 2025.

BY THE COURT:


s/Christopher B. Brown
Christopher B. Brown
United States Magistrate Judge


cc:    MARK ALLEN PRINKEY
        MT-8991
        SCI LAUREL HIGHLANDS
        5706 Glades Pike
        P.O. Box 631
        Somerset, PA 15501
        (via U.S. First Class Mail)

        Douglas J. Keating
        Bedford County District Attorney
        200 S. Juliana St.
        Bedford, PA 15522
        (via ECF electronic notification)